L. G. BAREFOOT v. WESTERN UNION TELEGRAPH COMPANY.

Decided March 22, 1902.

**Telegraph Company—Delivery of Message Sent in Care of Another.**

Where a message addressed to F. in care of a business firm was accepted for transmission by the telegraph company upon information to its agent by the sender that if F. was away the firm would forward the message to him, and F. was in fact away, and the business office of the firm was closed at that time, it being Sunday, and the messenger, without further effort to find the members of the firm, who were well known, delivered the message to the clerk of the hotel where F. stopped while in town, and who had authority to forward mail and telegrams addressed to him, and the message was never delivered to F., and the sender sued for failure to deliver, it was error for the court to instruct a verdict for the defendant, although if F. had brought the suit such charge might have been warranted.

Appeal from Cooke. Tried below before Hon. D. E. Barrett.

*Potter & Potter,* for appellant.

*Wilkins & Vinson* and *N. L. Lindsley,* for appellee.

CONNER, CHIEF JUSTICE.—This suit was instituted by appellant, L. G. Barefoot, in the District Court of Cooke County, against the appellee for damages in the sum of $1250, alleged to have been sustained by plaintiff on account of the negligence of the appellee company in failing to deliver the following telegram: "Chickasha, I. T., Jan. 13, 1901.—To D. R. Fant, Care D. Sullivan & Co., San Antonio, Texas: Meet me at Fort Worth Monday. Will close deal for steers. Answer. L. G. Barefoot."

D. R. Fant resided in San Antonio, but had cattle situated in the Indian Territory near Chickasha, where Barefoot resided. Prior to the 13th day of January Fant had authorized Barefoot to sell said cattle, agreeing to give him as compensation therefor 50 cents for each one sold, and pursuant thereto Barefoot had contracted with one Russell, a re-

sponsible buyer, for the sale of 2500 head of the cattle, and Barefoot thereupon wired Fant as indicated above for the purpose of concluding the sale. The telegram as above set out was received by appellee's receiving agent in San Antonio about noon of the same day, and the carrier to whom it had been delivered for that purpose took it to the business office of D. Sullivan & Co., in whose care the telegram had been sent, then doing business in San Antonio, but found the doors closed, it being Sunday. The carrier thereupon took it to the hotel at which Fant made his home while in the city, but found that he had departed on a temporary visit to points in Mexico. The clerk of the hotel, however, directed that it be forwarded to an address he gave in Mexico, the clerk receiving the telegram for the purpose of indorsing such address on the envelope and of procuring the telegram to be so forwarded. The telegram was by the carrier returned to the office of appellee and forwarded as the clerk had directed, but it seems that it had been improperly directed, at least it never reached Fant, of which fact the office in San Antonio was soon thereafter informed.

Appellee made no further effort to deliver, and the telegram was never in fact delivered to either Fant or to D. Sullivan & Co. until some time in March, thereafter, when too late to complete the sale contracted by Barefoot. On leaving San Antonio for Mexico Fant had authorized said clerk of the hotel to receive and to forward to him at an address given all letters and telegrams that might come to Fant's address during his absence. The two members of the banking firm of D. Sullivan & Co. had long lived in San Antonio and were well known, and there was evidence tending to show that they knew Fant's address in Mexico and would have forwarded the telegram thereto had it been delivered to them as directed, or that had delivery thereby not been perfected, they would have retained the telegram and within sufficient time have delivered it to Fant upon his return. Had Fant received the telegram while in Mexico, or upon his return therefrom, he would at once have acted in accordance with its direction and proceeded to Fort Worth, and he and Russell would have closed the trade upon the terms agreed upon by Barefoot.

Upon the conclusion of the evidence the court directed the jury to return a verdict for the defendant, which was accordingly done, and this appeal has been prosecuted from the judgment entered in accordance therewith.

We think the court erred as assigned in giving the peremptory instruction. Counsel for appellee insists with considerable force that the real contract entered into on the part of the appellee was to exercise reasonable diligence to deliver the message to Fant, and that this duty was discharged by delivery to the clerk of the hotel in San Antonio, the following authorities being cited in support of this contention: Telegraph Co. v. Houghton, 17 S. W. Rep., 846, 82 Texas, 561; Telegraph Co. v. Jackson, 46 S. W. Rep., 279; Telegraph Co. v. Young, 77 Texas, 245; Telegraph Co. v. Wofford, 60 S. W. Rep., 546; Joyce on Electric Law,

p. 781; Telegraph Co. v. Mitchell, 44 S. W. Rep., 274, and 1075. These authorities probably support the proposition advanced where the suit is by or in behalf of the addressee in the message. In this case, if Fant had sued alleging negligence in delivery, he would doubtless be concluded by the fact that the telegram had been delivered to the clerk of the hotel who had been specially authorized by Fant to receive it. In such case, as to him appellee's duty of diligence in delivery would, under the circumstances, seem to have been entirely discharged. But here the sender sues, and he testified: "At the time I delivered this message to the operator at Chickasha I told him that I had sold Fant's cattle; that I had $1250 in the deal, and that I wanted him to rush the message through. I told him that Fant had told me that as he was away so much, to always send the messages in care of D. Sullivan & Co., as they always knew where he was, and would forward the messages to him."

We think, therefore, that the contract between the appellee company and Barefoot was to exercise reasonable diligence to deliver the telegram to Fant, if in San Antonio, and in case of his absence, then to exercise like diligence to deliver it to D. Sullivan & Co. There was undoubtedly evidence tending to show that notwithstanding the failure to find the office of D. Sullivan & Co. open on Sunday, members of that firm could easily have been found, or if not found upon that day, that they could have been readily found the succeeding day, and that had the telegram been so delivered to D. Sullivan & Co., Fant would probably have received it in time to effect the object of its transmission. The evidence as a whole tends to show that at the time of the delivery of the telegram to appellee's agent in Chickasha it was in the contemplation of the parties to the contract that Fant might be absent from the place of destination, and a further transmission of the telegram thereby become necessary. Barefoot, the sender, undoubtedly had the right to provide against this contingency, and to select the agent or agents whom he could best trust as the medium through which its further transmission might be secured. This he did with appellee's concurrence, and we think appellee's agents in San Antonio, in assuming to decide for themselves that the clerk of the hotel was the more available or certain medium, did so at their peril. Fant himself, in so far as it affected appellant's rights, had no authority to direct the delivery of the message in the contingency contemplated to a person other than those designated by appellant. The case might be different did the evidence show that the clerk had been authorized to receive and act upon telegrams of the character in question, but it appears that his authority extended merely to the receipt of telegrams and letters directed to Fant for the purpose of having the same forwarded.

In the case of Telegraph Co. v. Dryburg, 35 Pennsylvania State, 298, 78 American Decisions, 338, one Robert Le Roy sent to Dryburg, in Philadelphia, the following telegram: "Send me, for Wednesday evening, two hand bouquets, very handsome, one of five and one of ten dollars." In the message as received in Philadelphia the words "two hand"

bouquets had been changed so as to read "two hundred" bouquets. In the opinion holding the telegraph company liable for the damage occasioned by the unauthorized change in the telegram which had been made by the sending agent of the company, the Supreme Court of Pennsylvania, speaking through Justice Woodward, say: "The telegraph company did not send Le Roy's message as he wrote it. If written as the company's agent read it, the word *hand* was written *hund;* and if the company had sent the word *hund* to Dryburg, they would have been in no fault. Their agent, however, assumed that hundred was meant, and accordingly added the three letters, r e d, which did all the mischief. We do not understand that there was any dot after the letters *hund,* to indicate a contraction; so that the agent's inference that hundred was the word meant was entirely gratuitous."

In the case of Telegraph Co. v. Thompson, 30 Southwestern Reporter, 250, a telegram from Dallas to "Jane Thompson, care of Mr. Blanton, Meridian, Texas," was delivered by the receiving agent of the company at Meridian to a bus driver for delivery to Mr. Blanton, Jane Thompson not being within free delivery limits. There was evidence tending to show that Blanton had authorized the bus driver and others to receive telegrams of the character there in question for the purpose of delivery to him. This court there held, in effect, that the duty of the telegraph company had not been discharged, and in discussing the contract of transmission we say: "Blanton was in no sense a party to it, or interested in it; hence he had no power to waive the personal delivery which it imposed on appellee in behalf of appellant. The undertaking was not to deliver the message to Blanton, or some person appointed by him to receive it, but to Blanton himself or appellant, and to no one else." Upon another appeal in the same case the conclusion so announced was adhered to by us in an oral opinion, and the judgment was affirmed, the Supreme Court refusing writ of error May 16, 1901.

In the recent case of Telegraph Co. v. Turner, 60 Southwestern Reporter, 432, decided by our Supreme Court upon certified question, it was held to constitute negligence for the company to undertake to send a message to a point beyond its line as it had contracted to do, over a telephone line other than as directed by the sender. The court say: "Turner, the sender of the message, had the right to direct that it be sent by way of Naples; and the attempt to send it by Atlanta was not a discharge of the duty which the company owed him. The company was engaged in the operation of a line and the transmission of messages to Naples, and was charged by law with the duty of sending messages to that point for all persons upon payment of the proper charges. This obligation gave to Turner the right to demand that his message be sent to that point, and delivered to the agents of the company operating the telephone line from there to Linden. The defendant also held itself out as willing to undertake the duty, in addition to that just defined, of forwarding messages over connecting lines, acting as the agent of the sender. In employing it to perform the latter service, the sender undoubtedly

had the right to instruct it, as any other agent, to send the message over a particular connecting line with which it was doing business."

We think, therefore, as stated in the beginning of this opinion, that the court erred in giving the peremptory instruction of which complaint is made, and that the judgment should be reversed and the cause remanded for a new trial in accordance with the views herein expressed.

*Reversed and remanded.*

Hunter, Associate Justice, did not sit in this case.